**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 1:90-cr-102 |
| v. | |
| THEODORE HENDERSON III, | |
| *Defendant*. | |

**UNITED STATES' POSITION ON DEFENDANT'S MOTION
TO REDUCE SENTENCE PURSUANT TO § 404 OF THE FIRST STEP ACT**

The defendant, who is serving seven life sentences for his role in a conspiracy that left one Alexandria City police officer dead and another seriously wounded,[1] asks the Court for a sentence reduction pursuant to § 404 of the First Step Act. The United States, through undersigned counsel, opposes that request.

Over the course of a two-day period in March 1989, the defendant and his coconspirators committed a series of violent crimes. On March 21, the defendant attempted to kill a rival drug dealer, Kevin Struthers, because he believed Struthers was selling drugs on the defendant's territory. Indictment at 7-8 (¶ 19-22); *see* Def. Br. 20. The following day, the defendant and coconspirator Bruce Murrell confronted another drug dealer, Eddie Jackson, about a drug debt. When Jackson refused to pay, the defendant and Murrell instructed Jamie Wise—whom they hired to threaten to kill Jackson—to storm into Jackson's residence. Wise robbed Jackson and

---

[1] The second officer never recovered from the trauma of that day and tragically took his own life four years later. *See* Carlos Sanchez, Alexandria Officer an Apparent Suicide, *Washington Post*, July 31, 1993, https://www.washingtonpost.com/archive/local/1993/07/31/alexandria-officer-an-apparent-suicide/46d6e901-c1b6-4fc6-8d0f-ed2a43280fd5/.

1

took five people hostage. After an hours-long standoff with police, Wise killed one Alexandria police officer and seriously wounded another, before the police shot and killed Wise.[2]

A grand jury returned a 13-count indictment against the defendant, who exercised his right to trial and was convicted of ten offenses. This Court imposed seven life sentences, including life sentences for two convictions for violent acts in aid of racketeering (18 U.S.C. § 1959), RICO and RICO conspiracy (18 U.S.C. § 1962), and for three cocaine base convictions (21 U.S.C. §§ 841 and 846). This Court also imposed five-year sentences for two § 924(c) convictions and a 10-year sentence for a separate § 1959 violation.

The defendant now asks the Court to reduce his sentence to time-served on all counts, citing § 404 of the First Step Act. The Court should deny the defendant's request. None of the defendant's non-cocaine base convictions (all three § 1959 convictions, the two § 1962 convictions, and the two § 924(c) convictions) are "covered offenses" under the First Step Act because they did not trigger a mandatory minimum sentence under the Controlled Substances Act. *See Terry v. United States*, 141 S. Ct. 1858, 1860 (2021). The defendant is therefore not eligible for a reduced sentence on any of those convictions. While the government acknowledges that the defendant's three cocaine base-related convictions are "covered offenses," it asks the Court to impose the statutory maximum penalty for each of those convictions.

---

[2] One of the defendant's coconspirators, Armistead Gravette, previously filed a motion for a sentence reduction under the First Step Act. ECF No. 69. The defendant cites language in the United States' response to Gravette's motion explaining that Gravette personally recruited Wise and understood that he was dangerous as if it were a concession that the defendant's conduct was not so bad. *See* Def. Br. 19. The defendant concedes he shot at Mr. Struthers (Def. Br. 20), and while the government refers the Court to its response to Mr. Gravette's motion for a more complete recital of the facts of the case, even the brief facts outlined in this response illustrate that the defendant was personally involved in the scheme to have Wise threaten to kill Jackson and personally involved in signaling Wise to attack Jackson after he and Murrell failed to collect the drug debt.

## BACKGROUND

### A.  The defendant is convicted at trial and is sentenced to life in prison.

Because one of the defendant's coconspirators, Armistead Gravette, has already filed a motion for a sentence reduction in this case, the government refers the Court to its opposition to Mr. Gravette's motion for a more complete outlining of the facts of the case and the operation of the First Step Act and the Fair Sentencing Act. *See* ECF No. 72.

For present purposes, the story picks-up at sentencing, when this Court imposed seven life sentences on the defendant, as outlined in the chart below:

| Count | Statute of Conviction | Prison sentence |
|---|---|---|
| 1 | 21 U.S.C. § 846: Cocaine base conspiracy. | Life. |
| 2 | 18 U.S.C. § 1959: Conspiracy to commit violent crimes in aid of racketeering. | Life. |
| 3 | 18 U.S.C. § 1959: Attempt to commit violent crimes in aid of racketeering. | 10 years. |
| 4 | 18 U.S.C. § 924(c): Use and carry of a firearm during and in relation to a crime of violence. | 5 years. |
| 5 | 18 U.S.C. § 1959: Violent crimes in aid of racketeering. | Life. |
| 6 | 18 U.S.C. §§ 924(c) and 2: Use and carry of a firearm in relation to a crime of violence. | 5 years. |
| 7 | 18 U.S.C. § 1962(d): RICO conspiracy. | Life. |
| 8 | 18 U.S.C. § 1962(c): RICO. | Life. |
| 10 | 21 U.S.C. § 841(a)(1): Possession with intent to distribute cocaine base. | Life. |
| 12 | 21 U.S.C. § 841(a)(1): Possession with intent to distribute cocaine base. | Life. |

*See* ECF No. 83-4 (verdict form); ECF No. 83-5 (docket entry).

There are several additional important points with respect to the defendant's motion. Per the statute, the Court's sentence for the two § 924(c) convictions were to be served "consecutively to each other and consecutively to the remaining counts." ECF No. 83-5. For both the RICO conspiracy and RICO offenses, the predicate act on which the sentence is based is first-degree murder, not any drug offense, meaning the sentence was not in fact based on the amount of cocaine base at issue. *See* PSR, Worksheet A (Counts Seven and Eight). For all

cocaine base offenses, the Court calculated a final offense level of 45, with the defendant falling in criminal history category III. *See* PSR, Worksheet A (Counts 1, 10, and 12); PSR ¶ 52; Worksheet C (Criminal History). The final offense level for all three drug convictions incorporated a base level of 38 because the defendant was accountable for 2.6 kilograms of cocaine base (PSR Worksheet A (Counts 1, 10, and 12)). The defendant was assessed a three-level enhancement under U.S.S.G. § 3A1.2 because there were "official victims" to his offenses and a four-level enhancement under U.S.S.G. § 3B1.1(a) because he was an organizer or leader of the conspiracy. *See* PSR Worksheet A; PSR ¶ 26. The defendant was assessed a level 50 based on his RICO and RICO conspiracy convictions and an additional level was added due to the three drug convictions. *See* PSR Worksheet B (Multiple Counts). Overall, the defendant's combined final offense level was 51. *Id.* The Guidelines called for a mandatory life sentence at either level 50 or level 51.

In denying a reduction for acceptance of responsibility, the Probation Office reported that the defendant insisted "he was railroaded" and "was not even down here" at the time of the offense. PSR ¶ 28.

**ARGUMENT**

**I. The defendant is not eligible for a sentence reduction with respect to all non-cocaine base offenses.**

The defendant was given four life sentences resulting from his convictions under 18 U.S.C. §§ 1959 and 1962. Neither statute is a "covered offense" under the First Step Act, and no other legal principle permits resentencing for a non-covered offense.

**A. Convictions under 18 U.S.C. §§ 924(c), 1959, and 1962 do not permit a sentence reduction under the First Step Act.**

To begin, the defendant is not eligible for a sentence reduction with respect to any of the non-cocaine base convictions. This accounts for Counts 2-8 of the Indictment and applies to four

4

of the defendant's seven life sentences.[3] Those convictions, for violations of §§ 924(c), 1959, and 1962, are not "covered offense[s]" because they do not constitute "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." First Step Act, § 404, Pub. L. 115-391, 132 Stat. 5194. In *Terry v. United States*, the Supreme Court recently held that offenders are not eligible for a reduction unless they are convicted of an offense carrying a mandatory minimum sentence for cocaine base. *See Terry*, 141 S. Ct., at 1860. Defendants whose statutory penalties were not affected by the Fair Sentencing Act are therefore not eligible under § 404. *See id.* at 1862 ("We thus ask whether the Fair Sentencing Act modified the statutory penalties for petitioner's offense."). As explained more fully in the government's response to Gravette's motion, this conclusion is reinforced by the First Step Act's plain text and fits the basic purposes of both the First Step Act and the Fair Sentencing Act. *See* ECF No. 72, at 2, 6-7.

Here, the cocaine base thresholds affected by the Fair Sentencing Act and made retroactive by the First Step Act have nothing to do with the statutory penalties for any of Counts 2-8. The maximum sentence for the three § 1959 convictions was determined based on the predicate act of violence. *See* 18 U.S.C. § 1959(a)(1)-(6). The minimum sentence for the two § 924(c) convictions were based on whether the government proved the firearm was possessed, brandished, or discharged in connection with a crime of violence or drug offense, and the maximum is life. *See id.* § 924(c). And the maximum sentence for the § 1962 convictions depended on whether any of the predicate acts supported a life sentence. *See* 18 U.S.C. 1963(a)

---

[3] The defendant does not address the § 924(c) convictions and the § 1959 conviction for which he received 10 years. The government does not believe the defendant has served the § 924(c) sentences because they were ordered to be served consecutively to each other and consecutively to the remaining counts. *See* ECF No. 83-5. The defendant has served the 10-year § 1959 conviction, which the Court ordered to be served concurrently with the life sentences. *Id.*

(maximum penalty for violating § 1962 is 20 years or else life if a predicate act carried a maximum of life). As the PSR makes clear, the basis for the defendant's life sentences under § 1962 was the first-degree murder provision, not any of the three cocaine base offenses. *See* PSR, Worksheet A (Counts Seven and Eight).

With respect to the RICO convictions, the defendant says that courts have "impose[d] lower sentences upon defendants previously convicted of racketeering, where predicates included not only covered drug offenses but non-covered violent offenses." Def. Br. 13-14. This is Mr. Gravette's primary argument, and it fails for the same reasons as Mr. Gravette's—namely, even assuming RICO or RICO conspiracy could ever be a covered offense, it is certainly not a covered offense where, as here, the life sentence is supported by at least one other predicate that has nothing to do with cocaine base. *See* ECF No. 72, at 6-13.

The defendant goes on to cite *United States v. Jones*, 2019 WL 4933578 (D. Conn. 2019), *United States v. Mothersill*, 421 F. Supp. 3d 1313 (N.D. Fla. 2019), and *United States v. Mazzini*, 487 F. Supp. 3d. 1170 (D.N.M. 2020). Def. Br. 14. The government refers the Court to its discussion of *Jones* and *Mothersill* in its response to Mr. Gravette. *See* ECF No. 72, at 11-13. As for *Mazzini*, like *Jones* and *Mothersill*, that case is inconsistent with *Terry*. Moreover, it is based on the premise that the cocaine base penalties "in effect at the time of [the defendant's sentence] … impacted [the defendant's] sentence on all counts." 487 F. Supp. 3d. at 1180. That argument is not plausible here because the cocaine base penalties had no legal impact on the life sentences imposed for the defendant's convictions under §§ 1959 and 1962.

**B. The Supreme Court's decisions in *United States v. Apprendi* and *Alleyne v. United States* are not a basis for a sentence reduction under the First Step Act.**

The defendant argues that none of non-cocaine base offenses support a life sentence based on retroactive application of *United States v. Apprendi*, 530 U.S. 466 (2000) and *Alleyne v.*

6

*United States*, 570 U.S. 99 (2013).[4]

As noted above, the maximum penalty for violating § 1959 depends on what violent act the government can prove, and the maximum penalty for violating § 1962 depends on whether any of the predicate acts carries a maximum term of life in prison. The defendant claims that, under *Apprendi* and *Alleyne*, the Court must conclude that none of the defendant's § 1959 or § 1962 convictions support a life sentence because the jury form did not specify which predicate or predicates the jury found proved. Therefore, the defendant argues, the Court is required to assume the jury found only the least serious predicate beyond a reasonable doubt and concludes that the maximum penalty for his first § 1959 conviction (Count Two) is three years, while the maximum sentence for his third § 1959 conviction (Count Five) and two § 1962 convictions (Counts Seven and Eight) is 20 years. And because the defendant's drug convictions no longer carry statutory maximum penalties of life in prison, under the defendant's theory he is not eligible for a life sentence for any conviction. *See* Def. Br. 23-26.

The defendant concedes that neither *Apprendi* nor *Alleyne* applies retroactively, which one would think is the end of the matter. Def. Br. 8; *see Jones v. Zych*, 812 Fed. App'x 115, 124-25 (4th Cir. 2020) (unpublished) (*Alleyne* doesn't apply retroactively); *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001) (*Apprendi* doesn't apply retroactively). But no, the defendant claims lacking retroactive application "is different than saying they [*Apprendi* and *Alleyne*] have no significance" for purposes of the First Step Act. Def. Br. 8. It's not clear what the defendant means. If he means that, in fashioning a new sentence, the Court is free to consider the effect of

---

[4] In *Apprendi*, the Supreme Court held that, other than the fact of a prior conviction, any fact that increases the statutory maximum must be submitted to a jury and found beyond a reasonable doubt. *See* 530 U.S. at 490. In *Alleyne*, the Supreme Court held that, other than the fact of a prior conviction, any fact that increased a mandatory minimum must also be submitted to a jury and found beyond a reasonable doubt. *See* 570 U.S. at 103.

those cases as if they were retroactive, that does not address the threshold question of eligibility. As long as the life sentences for the §§ 1959 and 1962 convictions are supported by life sentences that have nothing to do with the cocaine base weight thresholds, the defendant is not eligible for a sentence reduction on those convictions. If, as the government suspects, the defendant means that the Court is *required* to find that none of the § 1959 or § 1962 convictions support a life sentence, that position is wrong. There is nothing in the First Step Act to support the defendant's reading that § 404 requires courts to apply *Apprendi* or *Alleyne*. The defendant claims that somehow the statutory language requiring courts to impose a reduced sentence for covered offenses "as if" the *Fair Sentencing Act* were in place at the time of the conduct incorporates *Apprendi* and *Alleyne* (*see* Def. Br. 7), but that is unmoored from any text (or any legislative history for that matter). The defendant concedes as much, because he argues that Congress was aware of those decisions and therefore *must have* intended courts to consider them in imposing a reduced sentence under the First Step Act. *See* Def. Br. 7. But that argument simply begs the question, and the best reading of § 404's direction to impose a sentence "as if" the Fair Sentencing Act were in effect is simply to apply the revised weight thresholds. In any event, requiring retroactive application of paradigm-shifting precedents expressly held not to be retroactive would be a seismic change in law, and Congress does not "hide elephants in mouseholes." *Whitman v. American Trucking Assoc.*, 531 U.S. 457, 468 (2001).

The defendant cites several cases in support of his argument that *Apprendi* and *Alleyne* apply, including this Court's decision in *Ferguson v. United States*, 2020 WL 201642 (E.D.V.A. Jan. 13, 2020), which the defendant says "applied the principles of *Apprendi* and *Alleyne* retroactively." Def. Br. 9. But the opinion does not cite either case and the defendant's eligibility did not turn on application of those cases. *See* 2020 WL 201642, at *1-*2.

8

The defendant also cites *United States v. Hardnett*, 417 F. Supp. 3d 725 (E.D.V.A. 2019) and *United States v. Smith*, 379 F. Supp. 3d 543 (W.D.V.A. 2019). The Court should not follow those cases. In *Hardnett*, the court relied on the Supreme Court's decision in *Danforth v. Minnesota*, 552 U.S. 264 (2008) to conclude that it could apply *Apprendi* and *Alleyne* in determining eligibility. 417 F. Supp. at 740-41. But *Danforth* was about the power of *state* courts to retroactively apply a new constitutional rule in *state* proceedings. *See* 552 U.S. at 275. The court further explained its decision by noting that "a judge's authority to issue a sentence derives from, and is limited by, the jury's factual findings of criminal conduct," (*id.* at 741-42) but, while true under *Apprendi* and *Alleyne*, it does not answer the question whether those cases apply retroactively. In *Smith*, the court provided no reasoning at all for its decision, simply noting that it was "join[ing] other courts in finding" that *Apprendi* and *Alleyne* "are applicable in the context of the First Step Act." 379 F. Supp. 3d at 546 (collecting cases). The Supreme Court has, in fact, simplified the procedure for determining whether a defendant is eligible for relief under the First Step Act by holding that the only question is whether the defendant was convicted of an offense for which the statutory penalties were modified by the Fair Sentencing Act. *See Terry*, 141 S. Ct., at 1860. The Court should follow that approach here and conclude that the defendant is not eligible for relief for any conviction pursuant to a statute whose penalties were not modified by the Fair Sentencing Act.

The defendant's argument is stunning in its implications and illustrates precisely why neither case has retroactive application. The defendant was convicted and sentenced a decade before *Apprendi* and 23 years before *Alleyne*. Following the well-established law at the time of trial, the Court did not require a special verdict form in which the jury indicated which predicates it found proved beyond a reasonable doubt because that was not legally necessary. In rejecting

9

the government's request for such a form with respect to the RICO offenses, the Court expressly stated that the law did not require it. *See* Def. Br. 22-23 (citing pretrial hearing transcript). Today, of course, the Court would require such a form in order to satisfy *Apprendi* and *Alleyne*. But having followed the law to a letter in 1990, it is not valid to say precedents expressly found to lack retroactive application in fact *require the retroactive application of lower statutory maximum penalties* as part of a limited resentencing procedure. If the defendant's argument were correct, it means that the First Step Act—designed and written to provide relief to individuals convicted of cocaine base offenses—requires the reopening of a vast number of §§ 1959 and 1962 cases decided before 2013, an outcome that is impossible to imagine.

In sum, none of the defendant's non-cocaine base offenses are "covered offenses" because the First Step Act and Fair Sentencing Act did not modify the statutory penalties for them. Therefore, the defendant is not eligible for resentencing on Counts 2-8.

### C. The First Step Act does not permit reopening portions of a sentence that are not affected by §§ 2 or 3 of the Fair Sentencing Act.

As a last-ditch effort, the defendant offers a final argument why he is eligible for a sentence reduction on all counts. He contends that the Court has authority to reduce his sentence on all counts as long as he was convicted of at least one "covered offense." *See* Def. Br. 10-14. By the defendant's logic, he is eligible for a sentence reduction as to his non-cocaine base offenses because he was also convicted of cocaine base offenses. That is, by the defendant's lights, he is eligible for a substantial sentencing benefit because the government was able to prove he committed serious drug crimes *in addition* to acts of wanton violence.

As support, the defendant relies on the Fourth Circuit's decisions in *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019) and *United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020), as well as on two out-of-district cases: a Maryland district court's decision in *United*

10

*States v. Hill*, 2020 WL 891009 (D. Md. 2020) and a West Virginia district court's decision in *United States v. Brown*, 2020 WL 3106320 (W.D. Va. 2020). Each of those decisions pre-date *Terry*, which limits relief to offenses whose statutory penalties were amended by the Fair Sentencing Act and therefore forecloses relief in this case. *See Terry*, 141 S. Ct., at 1860. Contrary to the defendant's claims, *Wirsing* precludes his argument because it expressly forbade "plenary resentencing." *See* 943 F.3d at 181 n.1. If granting a reduction for a non-covered offense is not "plenary resentencing" then nothing is. The language from *Wirsing* on which the defendant relies—that "there is no indication that Congress intended a complicated and eligibility-limiting determination at the 'covered offense' stage of the analysis"—means only that a defendant remains eligible for a reduced sentence as to a covered offense even if the defendant was convicted of other offenses. *Id.* at 186; Def. Br. 10.

*Gravatt* is simply inapplicable. The issue in that case was whether a defendant convicted of a dual-object conspiracy involving at least 50 grams of cocaine base (triggering the 10-year/40-year penalties) and at least five kilograms of powder cocaine (independently triggering the same penalties) was eligible for a sentence reduction. *See* 953 F.3d at 259, 263. In other words, the issue was whether the powder cocaine element of the offense meant that the cocaine base offense was not a covered offense. The Court's analysis in that case has no bearing on the issue here—whether the defendant is eligible for a reduction as to a sentence imposed for non-covered offenses because he was convicted of covered offenses as well. For that same reason, *Brown* is also inapplicable here. *See* 2020 WL 310632, at *1 (defendant pled guilty to conspiracy to distribute more than 50 grams of cocaine base and more than 5 kilograms of cocaine powder).

The defendant's argument thus rests entirely on *Hill*, in which a Maryland district court imposed a reduced sentence on a defendant convicted of both covered and noncovered offenses.

*See* 2020 WL 891009, at *1. The Court should not follow *Hill*. It, again, is not consistent with *Terry*, which defines a "covered offense" as one whose statutory penalties were modified by the Fair Sentencing Act. Additionally, *Hill* rests on the "sentencing package doctrine," which applies when, pursuant to a § 2255 motion, the court of appeals vacates a conviction on one count and other convictions remain in place. *See id.* at *5; *see also United States v. Smith*, 115 F.3d 241, 245 (4th Cir. 1997). Under those circumstances, the district court retains jurisdiction to resentence the defendant as to all counts. *See United States v. Hillary*, 106 F.3d 1170, 1171-72 (4th Cir. 1997). The basis for the sentencing packaging doctrine is the text of § 2255, and the Fourth Circuit has interpreted the term "sentence" in § 2255 to refer to the aggregate sentence rather than the sentence for the specific conviction at issue. *See Smith*, 115 F.3d at 245 ("Concluding that collateral review jurisdiction does extend that far [to permit resentencing], the court stated that the term 'sentence' in § 2255 does not refer to a specific offense.") (citing *Hillary*, 106 F.3d at 1172). Section 404 of the First Step Act does not provide the same "broad and flexible power to the district courts to fashion an appropriate remedy" for the overall sentence (*id.*) because it reaches only offenses whose statutory penalties were modified by the Fair Sentencing Act. That is, when § 404 refers to the court's authority to "impose a reduced sentence" it is *not* referring to the *entire* sentence (as the Fourth Circuit found with respect to § 2255) but rather to "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." First Step Act, § 404.

**II. Each of the three drug convictions is a "covered offense" under the First Step Act.**

The government acknowledges that the defendant's three cocaine base-related convictions are "covered offense[s]," and the defendant is therefore eligible for a reduced sentence on Counts 1, 10, and 12.

The Fourth Circuit has said that, when a defendant is eligible for resentencing, the court

must recalculate the Guidelines range and apply the § 3553(a) sentencing factors. *See United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021); *see United States v. Chambers*, 956 F.3d 667, 671-72 (4th Cir. 2020) (same). In recalculating the Guidelines range, courts are required to apply all relevant intervening case law. *See United States v. Lancaster*, 997 F.3d 171, 172 (4th Cir. 2021). The Fourth Circuit additionally requires sentencing courts to provide a sufficient explanation for the decision to impose a new sentence or not in order to "allow for meaningful appellate review and to promote the perception of fair sentencing." *Collington*, 995 F.3d at 360 n.6. The decision is reviewed for procedural and substantive reasonableness. *See id.*

The Court must impose a sentence within the prescribed statutory maximum sentence. *Id.* at 356. The defendant contends that all three convictions carry a five-year mandatory minimum sentence and a 40-year maximum sentence. Def. Br. 24-26. The government agrees with this assessment. By contrast to the eligibility determination, the Fourth Circuit has held that sentencing courts are required to apply intervening case law—regardless of whether it is retroactive—in calculating the Guidelines (*Collington*, 955 F.3d at 356) and there is no reason to distinguish between calculating the statutory maximum and calculating the Guidelines.

As for the Guidelines calculation, the 1990 version of the Guidelines applies[5] (*see* U.S.S.G. § 1B1.11 (Nov. 2021)), except that the current version of § 2D1.1 (concerning drug quantities) applies because those have been amended and apply retroactively. *See* U.S.S.G. App. C, amend. 782 (effective Nov. 1, 2014). Based on the current version of § 2D1.1, the 2.6 kilograms of cocaine base results in a base offense level of 32. *See* U.S.S.G. § 2D1.1(c)(4) (Nov. 2021); PSR, Worksheet A (Counts 1, 10, and 12) (defendant accountable for 2600 grams of

---

[5] The 1990 edition of the U.S. Sentencing Guidelines is available online: https://www.ussc.gov/guidelines/archive/1990-federal-sentencing-guidelines-manual.

cocaine base). Based on the 1990 version of the Sentencing Guidelines, the three-level enhancement under § 3A1.2 and the four-level enhancement under § 3B1.1(a) still apply, resulting in a final offense level of 39. *See* U.S.S.G. §§ 3A1.2, 3B1.1(a) (Nov. 1990). The defendant is in criminal history category III. *See* PSR ¶ 52. Under the 1990 Guidelines, this results a Guidelines range of 324-405 months. *See* U.S.S.G. § 5 (Nov. 1990).

For the reasons explained more fully in Section III, the United States recommends the Court impose the statutory maximum of 40 years (480 months) for each drug conviction.

### III. The Court should impose the statutory maximum penalties for any "covered offense."

Under § 3553(a), the Court should consider "the nature and circumstances of the offense," as well as the need for the sentence "to reflect the seriousness of the offense, to promote respect for the rule of law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1), (a)(2)(A). Those factors support the imposition of the statutory maximum for the defendant's drug convictions. The defendant notes that the disparity in threshold weight for cocaine powder and cocaine base imposed "overly harsh punishments, primarily on minorities." Def. Br. 26-27. That argument has much less force where, as here, the defendant was found to be personally responsible for 2.6 kilograms of cocaine base (*See* PSR, Worksheet A (Counts 1, 10, and 12))—nearly ten times the current threshold for the 10-year mandatory minimum. And then there is the violence. The defendant attempted to murder a rival drug dealer over a turf dispute. Simultaneously, he and his coconspirators hired muscle to threaten to kill another drug dealer who owed them money, a decision which resulted in the shooting of two police officers.

The Court should also consider the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The defendant's brief and his own letter to the Court go to considerable length in claiming that he has been rehabilitated. But notably the defendant's own letter does not

14

meaningfully discuss the effect of his actions on his victims or their families. He writes that he is "not proud of [his] past, which painfully affected the lives of [his] family and society" and goes on to refer to "all the things [he has] missed out on being in prison." ECF No. 83-10, at 1, 2. The single use of the word "regret" comes not in a reference to his crimes but in a reference to his early conduct in prison, as he writes that "during that time [his early period of incarceration] I behaved in a way I now regret." *Id.* at 3. The only time he mentions his victims is when he writes that "when [he] think[s] about the pain [his] own family feels because of what [he] did [he] can only have empathy for [his] victims and their families," but even then it's in the context of the pain he inflicted on his family. *Id.* at 5. The defendant's brief likewise emphasizes what the defendant has lost by being incarcerated, noting that the defendant "has missed out on much" with his family. Def. Br. 45. To some extent, this is understandable, because the brief is focused on why the defendant should be released, but it would nonetheless be easier to believe in the defendant's rehabilitation if he expressed deeper understanding or regret of the pain he caused.

While the defendant and his brief do not address that pain, there was a victim impact statement in the case. Officer Chelchowski's fiance (the officer who survived the initial incident) submitted a letter. She told the court that Office Chelchowski had "at least 180 shotgun pellets embedded in his legs which cannot be removed" and that "the prognosis is that he will suffer this pain for the rest of his life." PSR, Letter from Sherry L. Davis to the Court. She described watching "him suffer emotionally and psychologically" as a result of his trauma and referred to the nightmares he regularly experienced. She described the financial difficulties they faced, as well as the pain of watching "a brave, confident man lose the ability to complete the goals which he had set for himself." *Id.* We know now that, as a result of this trauma, Officer Chelchowski took his own life a few short years later.

15

The defendant's brief spends significant time outlining the difficulties he faced during his early years. Def. Br. 26-35. It appears that the defendant experienced a troubled home-life as a youth, although not for nothing, the defendant himself describes his childhood as "decent." ECF No. 83-10, at 1. His brief describes his move to South Carolina as triggering (*see* Def. Br. 30-31) but the defendant describes it an "opportunity to meet new friends, embrace new experiences, and meet family members [he] never thought exist[ed]." ECF No. 83-10, at 1. He writes that his "youth was basically what I call misspent" (*id.* at 2) rather than traumatic. In any event, the defendant's brief is wrong to contend that his "propensities were undoubtedly the product of the extraordinary traumas that plagued his childhood." Def. Br. 27. The vast majority of people with the defendant's background don't commit crimes and certainly aren't involved in violent conspiracies. The defendant's early life was a disadvantage, but it wasn't destiny.

The defendant's brief also contends that the defendant "was only 18 years old at the time of the offense conduct" and that "extensive research has shown that the relevant parts of the brain that govern impulsivity, judgment, planning for the future, foresight of consequences, and other characteristics that make people morally culpable do not reach maturity until the early or mid-twenties." Def. Br. 38. Is the defendant seriously arguing that, at 18, he was *too immature* to understand it was wrong to try to kill another human being? Or that he lacked the "foresight of consequences" to understand that hiring someone to threaten to kill in order to collect a drug debt could have disastrous, life-ending consequences? The defendant himself seemed to understand the seriousness of his crimes because he sought to downplay them during his interview to the Probation Officer after his conviction, insisting that he had been "railroaded" and wasn't even in the area when the crimes occurred. *See* PSR ¶ 28.

Similar flaws apply to the letter to the Court from Tyran Smith, who concedes the

defendant "made some damaging decisions at the tender age of 18" before explaining that, "[w]hen Theodore began his sentence, I could sense the hopelessness in his voice" but that "he never allowed the length of his prison sentence to hinder his development" and concluding that he "believes [the defendant] is ready to reenter the world, not just as a productive member of society, but as a citizen who will actively contribute to the betterment of his community." *Id.* ECF No. 89-9, at 1-2. Smith pledges to "finding a therapist who can help him shed the trauma of the last 30 years" (*i.e.* the trauma of his incarceration, not from feelings of guilt), and explains "there is no greater feeling than healing one's wounded inner child and recovering that sense of innocence." *Id.* at 2. Smith vouches for the defendant's "potential," and states that he "hope[s] to introduce him to like-minded friends and colleagues who can serve as positive examples of entrepreneurship." *Id.* Notably absent is a single word about the defendant's victims, any hopelessness they or their families felt as a result of the defendant's crimes, healing their trauma, or their potential.

In truth, and unfortunately, there is not much evidence the defendant regrets what he did beyond the consequences he faces for his conduct. He does not talk about remorse for the trauma he inflicted on others; he talks about what he has missed out, the pain he's inflicted on his family, and about his personal journey to accepting his imprisonment. He does not talk about personal responsibility; his brief talks about all the reasons he was forced into a life of crime. And he does not talk about using his freedom to heal old wounds (if that's even possible), redemption, or even mercy; he talks about "assist[ing] other individuals like [himself]" (who or how we are not told) "while going through life facing their obstacles." ECF No. 83-10, at 5. The defendant and his allies' laser-like focus on himself and his personal path undermines his assertions that he merits anything less than the statutory maximums.

**CONCLUSION**

The defendant's convictions under 18 U.S.C. §§ 924(c), 1959, and 1962 (Counts 2-8) are not "covered offenses" and therefore the defendant is ineligible for a sentence reduction for those sentences. While the defendant's three convictions under 21 U.S.C. §§ 841(a) and 846 (Counts 1, 10, and 12) are "covered offenses" under the First Step Act, the Court should impose the 40-year statutory maximum sentence for each of those three convictions.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:   /s/

Philip Alito
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone:   703-299-3806
Fax:         703-299-3980
Email:       Philip.Alito@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/
Philip Alito
Assistant United States Attorney